# UNITED STATES DISTRICT COURT

__NORTHERN__ District of __INDIANA__

UNITED STATES OF AMERICA
v.

SIRQUAIN BURR

**JUDGMENT IN A CRIMINAL CASE**

Case Number:  2:05 CR 105 PS

USM Number:  08444-027

John Maksimovich
Defendant's Attorney

**THE DEFENDANT:**

x  pleaded guilty to count(s)  __2__

☐ pleaded nolo contendere to count(s) _____
  which was accepted by the court.

☐ was found guilty on count(s) _____
  after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18:922(g)(1) | Felon in Possession of a Firearm | 10/22/2004 | 2 |

The defendant is sentenced as provided in pages 2 through __5__ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

x  Count(s)  __1__  x is  ☐ are  dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

March 21, 2006
Date of Imposition of Judgment

S/Philip P. Simon
Signature of Judge

Philip P. Simon, U.S. District Court Judge
Name and Title of Judge

March 21, 2006
Date

AO 245B     (Rev. 06/05) Judgment in a Criminal Case
Sheet 4 - Probation
USDC IN/ND case 2:05-cr-00105-PPS-APR   document 30   filed 03/27/06   page 2 of 15

Judgment—Page __2__ of __5__

DEFENDANT:        SIRQUAIN BURR
CASE NUMBER:      2:05 CR 105 PS

## PROBATION

The defendant is hereby sentenced to probation for a term of :     2 years

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance.  The defendant shall refrain from any unlawful use of a controlled substance.  The defendant shall submit to two periodic drug tests per month at the direction and discretion of the probation officer.

☐   The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse.  (Check, if applicable.)

X   The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon.  (Check, if applicable.)

☐   The defendant shall cooperate in the collection of DNA as directed by the probation officer.  (Check, if applicable.)

☐   The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer.  (Check, if applicable.)

☐   The defendant shall participate in an approved program for domestic violence.  (Check, if applicable.)

If this judgment imposes a fine or restitution, it is a condition of probation that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1.  The defendant shall not leave the judicial district or other specified geographic area without the permission of the court or probation officer.

2.  The defendant shall report to the probation officer as directed by the court or probation officer and shall submit a truthful and complete written report within the first five (5) days of each month.

3.  The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer.

4.  The defendant shall support the defendant's dependents and meet other family responsibilities.

5.  The defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons.

6.  The defendant shall notify the probation officer at least ten (10) days prior to any change of residence or employment.

7.  The defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance, or any paraphernalia related to any controlled substances, except as prescribed by a physician.

8.  The defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered, or other places specified by the court.

9.  The defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer.

10. The defendant shall permit a probation officer to visit the defendant at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer.

11. The defendant shall notify the probation officer within seventy-two (72) hours of being arrested or questioned by a law enforcement officer.

12. The defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court.

13. As directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

14. The defendant shall pay the special assessment imposed or adhere to a court-ordered installment schedule for the payment of the special assessment.

15. The defendant shall notify the probation officer of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay any unpaid amount of restitution, fines, or special assessments.

AO 245B    (Rev. 06/05) Judgment in a Criminal Case
Sheet 4A — Probation
USDC IN/ND case 2:05-cr-00105-PPS-APR   document 30   filed 03/27/06   page 3 of 15

Judgment—Page __3__ of __5__

DEFENDANT: SIRQUAIN BURR
CASE NUMBER: 2:05 CR 105 PS

## ADDITIONAL PROBATION TERMS

The defendant shall be placed on home detention as a condition of probation for a period of 6 months, to commence within 30 days of the sentencing date (March 21, 2006). During this time, the defendant shall remain at his place of residence except for employment and other activities approved in advance by the probation officer. The defendant shall maintain a telephone at his place of residence without any call forwarding, Calller ID, call waiting, modems, answering machines, cordless telephones or other special services for the above period. The defendant shall wear an electronic device and shall observe the rules specified by the Probation Department.

The defendant is to pay the cost of the electronic monitoring portion of this sentence not to exceed the daily contractual rate. Payment for the electronic monitoring shall be made based on annual poverty guidelines established by the U.S. Department of Health and Human Services (HHS) on a sliding scale basis. The co-payment amount shall not exceed an amount determined by the Probation Officer's Sliding Scale For Monthly Co-Payment. Changes to the established rate can be made by the probation officer subject to supervisory approval.

The defendant shall participate in a drug aftercare treatment program under a co-payment plan which may include testing for the detection of drugs of abuse at the direction and discretion of the probation officer.

The defendant shall participate in a co-payment program to offset the cost of treatment. The co-payment amount is based on annual poverty guidelines established by the U.S. Department of Health and Human Services (HHS) on a sliding scale basis. The co-payment amount shall not exceed an amount determined by the Probation Officer's Sliding Scale For Monthly Co-Payment.

DEFENDANT:           SIRQUAIN BURR
CASE NUMBER:         2:05 CR 105 PS

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|        | **Assessment** | **Fine** | **Restitution** |
|--------|---------------|----------|-----------------|
| TOTALS | $ 100.00      | $ none   | $ none          |

☐ The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

☐ The defendant shall make restitution (including community restitution) payable to Clerk, U.S. District Court, (street address), (city, state, zip) for the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss*** | **Restitution Ordered** | **Priority or Percentage** |
|-------------------|-----------------|-------------------------|----------------------------|
|                   |                 |                         |                            |
| TOTALS            | $               | $                       |                            |

☐ Restitution amount ordered pursuant to plea agreement  $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

  ☐ the interest requirement is waived for the   ☐ fine   ☐ restitution.

  ☐ the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B    (Rev. 06/05) Judgment in a Criminal Case
Sheet 6 — Schedule of Payments
USDC IN/ND case 2:05-cr-00105-PPS-APR   document 30   filed 03/27/06   page 5 of 15

Judgment — Page  5  of  5

DEFENDANT: SIRQUAIN BURR
CASE NUMBER: 2:05 CR 105 PS

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

**A**  **X**  Lump sum payment of $ __100.00__ due immediately, balance due

☐ not later than _____, or
☐ in accordance   ☐ C,   ☐ D,   ☐ E, or   ☐ F below; or

**B**  ☐  Payment to begin immediately (may be combined with   ☐ C,   ☐ D, or   ☐ F below); or

**C**  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

**D**  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

**E**  ☐  Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F**  ☐  Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:05-CR-105 PS |
| | ) | |
| SIRQUAIN BURR | ) | |

### SENTENCING MEMORANDUM OPINION

On October 31, 2005, Sirquain Burr pled guilty to Count 2 of a two-count indictment, which charged him with being a felon in possession of a firearm. The government voluntarily dismissed the remaining one count of the indictment. Because Burr's prior felony was possession of a stolen car which he committed at the age of 18, and because Burr spent the next 10 years of his life without any brushes with the law, pursuant to *United States v. Booker*, 543 U.S. 220 (2005), and notwithstanding the Sentencing Guidelines, the Court sentenced Burr to two years of probation, including six months of home confinement.

### I. FACTUAL BACKGROUND

On October 18, 2004, Burr visited Jack's Loan Office Inc. to purchase a firearm, specifically a Ruger, model P89, 9 mm, semi-automatic pistol, serial no. 305-74692. He and the store employee, Kenneth Ribicki, completed an ATF form. Because Burr had provided an Indiana handgun permit, Ribicki did not have to complete an Indiana State Police background check form or a criminal background check with Indiana. After completing the ATF form, Ribicki called in the federal background check. The FBI operator informed Ribicki that the check was delayed. Ribicki explained the delay procedure to Burr (Burr had to wait three days to receive the firearm), and Burr then left the store.

Ribicki received a phone call on October 21, 2004 from a FBI operator, stating that the firearm may be released to Burr on October 22, 2004. Burr returned to the store on that date in the morning, completed the remaining paperwork, paid, and left with the gun. Approximately an hour later, another FBI operator called, advising Ribicki that there was a denial after the federal background check. Ribicki told her that the gun had already been released.

On November 16, 2004, ATF Special Agent Crafton went to Jack's Loan Office and met with Ribicki. Crafton reviewed the ATF form completed by Burr and Ribicki. Crafton also asked Ribicki to explain the procedure used for Burr's purchase of the firearm. In addition, Crafton asked Ribicki to check for previous purchases by Burr. Ribicki told Crafton that Burr had also purchased a Ruger, model P94, .40 caliber, semi-automatic pistol, on November 5, 1998.

On November 18, 2004, Crafton and Special Agent Mitten went to Burr's last known residence, requesting that he meet with them at the FBI Merrillville field office to discuss the purchase of the firearm. Burr asked Crafton whether he would be arrested as he had his two young children with him. Crafton responded that he would not be arrested and would be free to leave at any time. Burr agreed to meet Crafton and Mitten at the field office, and arrived at the office with his two children around 4:30 p.m.

Crafton and Mitten then questioned Burr regarding his handgun permit and the purchase of the firearm. Burr stated that he had carried a handgun permit for approximately ten years, starting in 1997 when he turned 21 years old and could legally obtain a permit. He also explained the procedure for his purchase of the firearm on October 18 and 22, 2004. They asked Burr about his previous gun purchase in 1998. Burr stated that he had purchased that firearm

from Jack's Loan Office, and that the gun had been stolen from his car about two years ago. He had reported the stolen firearm to the Gary Police Department.

Crafton and Mitten also questioned Burr about gun purchases that were revealed through an ATF trace information. On July 21, 1997, Burr purchased two Hipoint, .45 caliber pistols. Burr told Crafton and Mitten that he had purchased those guns from Jack's Loan Office, and that they had been stolen during a robbery at his residence. He had made a police report regarding the robbery to the Gary Police Department. The ATF trace information also indicated that Burr possessed three other firearms recovered by police. Burr told the FBI agents that he had been arrested by the Gary Police Department for having a Smith and Wesson .40 caliber pistol with no permit. Those charges, however, were later dropped when Burr produced a valid handgun permit.

Crafton and Mitten questioned Burr about his criminal history. Crafton had previously obtained a copy of Burr's felony conviction relating to auto theft in Cook County, Illinois. Burr stated that he had been arrested for minor traffic violations and the previously mentioned charge for not having a handgun permit, which was later dismissed. Within the paperwork provided by the National Instant Check System (NICS), Mitten observed that Burr had a warrant from a case in 1994. Mitten contacted the Clerk's Office in Cook County, who informed Mitten that there was an active warrant for a probation violation. The violation occurred in August 1995, and has remained active as of January 2006.

When asked if he had ever been arrested in Illinois, Burr could not initially remember. When asked more specific questions, Burr recalled a stolen car incident when he was 17-19 years old with his cousin, for which Burr received probation. Burr did not recall receiving any

information that he was prohibited from purchasing or possessing firearms. Burr was convicted on January 3, 1995 for aggravated possession of a stolen vehicle in Cook County, Illinois. He received a sentence of probation for two years, and restitution of $250.00, along with court costs.

Burr was indicted in the present case on July 22, 2005. Count 2 of the indictment related to Burr's possession of the firearm in October 2004, as described above. On October 7, 2005, Burr signed a plea agreement. On October 31, 2005, Burr pled guilty to Count 2 during his change of plea hearing.

## II. DISCUSSION

Burr's guideline range as computed by the Court was 12 to 18 months. Pursuant to *Booker*, Burr requested a non-guideline sentence. In particular, he requested a sentence of a term of probation. The Court sentenced Burr to two years of probation with six months of home confinement. Under *United States v. Booker*, 543 U.S. 220 (2005), the Court had to carefully consider both the guidelines and the more general factors set forth in 18 U.S.C. § 3553(a). Thus, at sentencing, the Court first computed the guidelines.[1] The Court then addressed Burr's request for a non-guideline sentence.

### A.   Computation of the Guidelines

The Court computed Burr's total offense level to be level 12. This level was calculated as follows: Burr's base offense level was placed at 14 pursuant to U.S.S.G. § 2K2.1(a)(6) because Burr was a prohibited person due to his prior felony conviction at the time he purchased

---

[1] Defendant initially objected to the pre-sentence report's criminal history computation. (*See* PSR ¶ 26.) However, in his Sentencing Memorandum filed on March 20, 2006, Defendant withdrew that objection.

a firearm. Burr then received a 2 point reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). Burr's total offense level therefore was 12.

Burr was in a criminal history category of II. This category was calculated as follows: Burr was convicted of possession of a stolen motor vehicle in January 1995. He received two years of probation. Pursuant to U.S.S.G. § 4A1.1(c), he received one criminal history point for that conviction and sentence. At the time the current offense was committed, because Burr had not paid the court costs as ordered by the judge in Cook County, he remained on probation in Cook County even though it otherwise would have expired some eight years ago. Pursuant to U.S.S.G. § 4A1.1(d), 2 points were therefore added. The total of the criminal history points was 3. According to the sentencing table at U.S.S.G. Chapter 5, Part A, 3 criminal points established a criminal history of II. Accordingly, the guideline imprisonment range was 12-18 months.

**B.      Burr's Request for Non-Guideline Sentence Under *Booker*.**

As mentioned above, Burr, pursuant to *Booker*, requested a non-guideline sentence of probation. The *Booker* decision has two parts to it. In the first part, the Court held that the Federal Sentencing Guidelines, promulgated pursuant to the Sentencing Reform Act of 1984, 18 U.S.C. § 3551 *et seq.*, violated a defendant's right to a jury trial under the Sixth Amendment. This was so because the guidelines required a judge to find facts that can increase a defendant's sentence beyond what could be imposed solely based on the jury's verdict. As a remedy, in the second part, a different majority of the Court severed two parts of the Act, 18 U.S.C. § 3553(b)(1), which made the guidelines mandatory, and 18 U.S.C. §3742(e), which mandated a *de novo* standard of review. With these modifications, the guidelines became "effectively advisory." *Booker*, 543 U.S. at 245.

*Booker* therefore requires a sentencing court to do two things: "The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." *Booker*, 543 U.S. at 264. At the same time, *Booker* requires district judges to take account of the factors set forth in § 3553(a). What complicates this task is that many of the § 3553(a) factors – such as the history and characteristics of the defendant, *see* § 3553(a)(1) – are factors that the guidelines either reject or ignore.

In addition to the guidelines themselves, the factors that the Court must now consider are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant, § 3553(a)(1); (2) the kinds of sentences available, § 3553(a)(3); (3) the sentencing range established for the applicable category of offense committed by the applicable category of defendant, § 3553(a)(4); (4) the pertinent Sentencing Commission policy statements, § 3553(a)(5); (5) the need to avoid unwarranted sentencing disparities, § 3553(a)(6); (6) the need to provide restitution to victims, § 3553(a)(7); and (7) the need for judges to impose sentences that reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and effectively provide the defendant with needed educational or vocational training and medical care, § 3553(a)(2).

In deciding how much weight should be given to the guidelines versus the § 3553(a) factors, the Seventh Circuit has provided substantial guidance to the district courts. A sentence within the guidelines range is presumed to be reasonable. *United States v. Williams*, 436 F.3d 767, 768 (7th Cir. 2006). By contrast, there is no presumption of unreasonableness that attaches to a sentence that varies from the range as long as it is adequately explained and consistent with the § 3553(a) factors. *United States v. Jordan*, 435 F.3d 693, 696 (7th Cir. 2006). In the present

case, after carefully considering all of the evidence presented and thoroughly reviewing the pre-sentence report (PSR), the Court varied from the guideline range and concluded that a sentence of six months home detention as a condition of probation is sufficient but not greater than necessary to meet the statutory purposes of sentencing.

At the outset, we note that the fact that Burr claimed that he did not know that he was prohibited from purchasing or possessing a firearm is, of course, not a defense to the offense of felon in possession of a firearm. *See United States v. Ladell*, 127 F.3d 622, 624-25 (7th Cir. 1997). Nonetheless, the nature and circumstances of how the offense was committed is a factor that the Court must take into consideration when fashioning a reasonable sentence. § 3553(a)(1).

Burr told FBI agents Crafton and Mitten that he did not recall being told that he was prohibited from purchasing or possessing firearms when he received his sentence of probation in 1995. It also appears that Burr did not possess any firearms during the two years of his probation. And as mentioned above, Burr filed two police reports with the Gary Police Department when his guns were stolen in two separate incidents. (PSR ¶ 7(i).) It would be surprising for a person who knew that he should not possess firearms to report such a robbery – twice. Such reports could land a defendant in hot water with either the local police or with ATF.

Moreover, Burr applied for and obtained an Indiana handgun permit in 1997 and then again in 2002. He had a handgun permit at the time he purchased all the guns referenced in the pre-sentence report, including the gun at issue in the current offense. Thus, from Burr's viewpoint, when the Gary Police Department (with the assistance of the State Police) approved his requests for the handgun permits, this merely confirmed what he says he otherwise already

believed – that he was permitted to purchase and possess firearms. This is a factor that goes to "the nature and circumstances of the offense" which militates in favor of a lower sentence.

The nature and circumstances of this case also reveal that Burr did not possess the guns for any illegal purposes, such as trafficking in them or using them in the commission of another offense. In many cases, individuals charged with felon in possession of a firearm frequently use those firearms for untoward reasons, be it drug dealing or for the commission of other violent crimes or gang involvement. In this case, there is no evidence suggesting that Burr possessed the guns for such purposes. This of course does not absolve him. It merely contrasts this case with the types of felon in possession cases that this Court ordinarily sees.

Other factors that enter the "the nature and circumstances of the offense" equation are the facts surrounding Burr's felony conviction in 1995. Burr's felony at issue in this case occurred when he was approximately 18 years old and involved a stolen car. This felony, which is serious as all felonies are, is nevertheless at the low end of the "seriousness" spectrum compared to other crimes the Court usually sees in these cases. Moreover, the fact that Burr was officially still on probation from his felony conviction in 1995 (which added two criminal history points) because he apparently hadn't paid some court costs or fines favors a more lenient sentence. It is apparent that the continuation of the 1995 probation did not stem from a substantive violation committed by Burr. Illinois has no interest in extraditing Burr for this violation. (*See* PSR at 21.) Furthermore, Burr is hardly a "fugitive from justice." (*Id.* at 21-22.) The Court finds such a characterization misleading as Burr was unaware of his probation violation until he was questioned by Crafton and Mitten for the current offense and had simply failed to pay costs in

-8-

Cook County, Illinois. Therefore, the two additional points for his probation violation, thus landing Burr with a Criminal History Category II, over-represents his criminal history.

But what truly counsels in favor of a non-guideline sentence in this case is the factor of "the history and characteristics of the defendant[.]" § 3553(a)(1). Since his felony conviction in 1995, Burr has led an exemplary life with the exception of two minor traffic infractions. He has had only two major brushes with the law – one when he was still a teenager and the current offense. Moreover, he has a consistent work history for the last decade (since he was placed on probation in 1995) – again, a characteristic that is often lacking in defendants appearing before this Court. (*See* PSR § 44.) He currently works with the Gary Fire Department Task Force and also attends a carpentry apprenticeship workshop program at the Gary Career Center. Furthermore, he has six children, and provides support for all of them.

The above facts further indicate that a sentence of imprisonment is unnecessary "to protect the public from further crimes of the defendant[.]" § 3553(a)(2)(C). A sentence of probation allows Burr to continue his work and vocational training, which supports his family and keeps him on the correct path of being a productive member of society. § 3553(a)(2)(D).

While we are mindful that the purpose of the guidelines is to avoid "unwarranted sentencing disparities," 3553(a)(6), we do not think that a sentence of probation with a six month term of home detention is unwarranted under the limited facts presented in this case.

### III. CONCLUSION

For the reasons stated above and at the sentencing hearing, the Court agreed with Burr's position regarding a non-guideline sentence and sentenced Burr to two years of probation, which included 6 months of home confinement, a non-guideline sentence pursuant to *Booker*.

**SO ORDERED.**

ENTERED: March 27, 2006

>     s/ Philip P. Simon
>     PHILIP P. SIMON, JUDGE
>     UNITED STATES DISTRICT COURT